UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ATHENAHEALTH, INC., <br><br> Plaintiff, <br><br> v. <br><br> LAUREN MAY, <br><br> Defendant. | Civil Action No. 16-11770 |

# COMPLAINT

## INTRODUCTION AND NATURE OF THE ACTION

1.  This is an action for a temporary restraining order, preliminary and permanent injunctive relief, damages and other relief arising out of defendant Lauren May's ("May") violation of the Defend Trade Secrets Act, breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of confidential and proprietary information and trade secrets under common law and statutory law, breach of fiduciary duty and conversion.

2.  Until recently, May was employed by plaintiff athenahealth, Inc. ("Athena") as a Senior Growth Analytics and Operations Associate working on marketing and other business development matters.

3.  May was bound by an Employment Agreement ("Agreement") that details her obligations regarding Athena's Confidential Information ("Confidential Information").

4.  Prior to the end of her employment, May emailed Athena's Confidential Information to a personal email address and appears to have deleted emails sent on her Athena email account in an effort to conceal her conduct. May has also refused to return Athena's

property (including Athena's computer) and Confidential Information despite repeated requests from Athena.

## PARTIES

5.      Plaintiff Athena is a Delaware corporation with a principal place of business in Watertown, Massachusetts.

6.      Defendant May is an individual who, on information and belief, resides at 120 Cottonwood Way Lake Placid, New York 12946.

## JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the Complaint asserts claims arising under a federal statute, The Defend Trade Secrets Act.

8.      The Court has jurisdiction over the Defendant because she consented to the jurisdiction of this Court in the Agreement.

9.      Venue is proper in this Court because the Defendant agreed to the venue of this Court in the Agreement.

## FACTS

### Athena's Business

10.     Athena is a leading provider of cloud-based electronic health record, practice management, and care coordination services to medical groups and health systems.

11.     Athena is a publicly traded company and has a nationwide client base and offices throughout the United States and India.

12. Athena's products and services are sold throughout the United States.

### Athena's Confidential Information

13. Athena's success depends on its ability to identify clients for its products and services, effectively sell its products and services to potential clients and ensure that its clients are satisfied with the products and services purchased from Athena.

14. Athena has invested and will continue to invest considerable resources to develop information, methods and techniques to identify clients and prospective clients, maintain business relationships with clients, learn clients' business and software needs, develop innovative solutions to market to clients and prospective clients, and develop sales strategies.

15. Within Athena's industry, this client information is regarded as confidential, proprietary and trade secrets.

16. Athena considers and treats such information, methods and techniques as trade secrets.

17. Such information, methods and techniques have significant economic value to Athena, and would be of significant economic value to competitors in the industry.

18. As part of its efforts to retain current clients and attract new clients, Athena routinely purchases or rents information on clients and prospective clients, at considerable cost, from third party sources.

19. While employed by Athena, May had access to and knowledge of this extensive confidential information regarding Athena's clients and prospective clients, including access to Salesforce.com, Athena's web-based client relationship management tool and Eloqua, Athena's marketing automation platform that housed detailed metrics on client and prospective client response to Athena's marketing communications. May also had access to confidential

documents regarding Athena's marketing activities, including marketing materials and other documents used in creating and tracking Athena's marketing efforts.

20. Athena uses Salesforce.com to monitor and develop relationships with new and existing clients and to store confidential sales information for all of its existing and prospective clients.

21. Athena compiles the client and prospective client information in Salesforce.com from a combination of purchased and licensed lists, marketing initiatives, client referrals, direct calls by Athena employees, and the athenahealth.com website user information.

22. In addition to basic client contact and prospect information, Athena uses Salesforce.com to track client and prospective client-specific details, including client and prospect-related discussions, client satisfaction and current vendor requirements.

23. The data collected detailing business development and client and prospective client activities is extremely sensitive in nature and includes such information as status of pending sales, business and competitive intelligence, value of opportunities and timeframe of potential initiatives.

24. Athena takes great efforts in gathering and refining its data, employing an entire department, its Growth Operations Team, which is dedicated to maintaining, updating, and verifying the information existing on Salesforce.com by such methods as matching, merging lists, and reviewing target research data.

25. The value of this client and prospective client information, or even a portion of it, far exceeds $75,000.00.

**Athena's Efforts To Maintain The Confidentiality Of Its Confidential Information**

26. Athena safeguards its confidential, proprietary and trade secret information, including by using encryption methods, employing automatic locking screen-savers on workstations, prohibiting non-Athena employees from using Athena's computers and other equipment, requiring employees to sign confidentiality agreements, training employees regarding the protection of confidential information, and circulating policies to employees on confidential information and the use of Athena's information systems and workstations.

27. For example, Athena's policy, G-105, Confidential Information, Guidance #5 detailed certain directives employed by Athena known as "PROTECT":

- **P**aper and Digital Media are disposed of securely in shredder bins
- **R**eports of security incidents are immediately sent to security@athenahealth.com
- **O**utside Guests are registered, display proper ID and are escorted when required
- **T**ools to prevent unauthorized disclosure are never disabled or circumvented
- **E**ncryption is always used when moving electronic data beyond our walls
- **C**omputers are locked when unattended and always under our control
- **T**raining to relevant policies and procedures is timely and documented.

A true and correct copy of G-105, Confidential Information, is attached as Exhibit A.

28. Athena's policy, C-602, Workstation Security and Use Policy, provides in part:

- Workstations are to be used in a manner that is consistent with the athenahealth Code of Conduct and as part of the normal execution of a user's job responsibilities.

- athenahealth-provided workstations (whether they are owned, rented, borrowed or leased) are intended to be used for business purposes only.

- Workstations may not be used to reveal or publicize confidential or proprietary information which includes, but is not limited to: PHI, financial information including primary account numbers, new business and product ideas, information concerning business

5

partnerships, marketing strategies and plans, Company databases, customer lists, computer source code and computer network access codes.

A true and correct copy of C-602, Workstation Security and Use Policy, is attached as Exhibit B.

## May's Employment Agreement

29. May was offered employment with Athena in November 2011 as a Marketing Analyst.

30. May initially worked for Athena from its Watertown, Massachusetts office, and later transferred to the Princeton, New Jersey office.

31. May eventually began to work remotely from her home in New Jersey, and did not work from any Athena office.

32. Because of the nature of May's position, her access to Athena's Confidential Information, and as a condition to her continued employment, May was required to sign an Employment Agreement (the "Agreement") containing restrictions on the use, disclosure and return of Athena's Confidential Information. A true and correct copy of the Agreement between May and Athena is attached as Exhibit C.

33. The Agreement provides, in relevant part, with respect to Athena's Confidential Information:

1. Employment: Term

…

d. Upon Athena's request or the termination of Employee's employment, Employee will immediately return to Athena all (i) documents, materials, records, files, notes, designs, drawings, notebooks, data, databases, and other information, in any media, related to the business of Athena or any of its affiliates, including all copies; (ii) property (whether owned or leased) of Athena or any of its affiliates that is in Employee's possession or control (including, but not limited to, badges, computer hardware, data storage devices, manuals, programs, printers, faxes, telephones, calling or credit cards, supplies, tools, and vehicles);

6

and (iii) documents and other media containing any Confidential Information (as defined in Section 5). … At Athena's request, Employee will provide Athena or its designee with access to electronic devices that Employee used during her Employment Period so that Athena can confirm that no Athena information is on such equipment.

…

5.  Confidential Information

   a. "Confidential Information" means any and all information belonging to Athena, or belonging to any third party (*e.g.*, any of Athena's affiliates, clients, or vendors) and held in confidence by Athena, that: (i) is not generally known to the public, (ii) is designated or treated by Athena or such third party as confidential, or (iii) would be reasonably understood to be of a confidential nature for a company in Athena's industry. Confidential Information may be in any form and includes, but is not limited to, information consisting of or relating to: algorithms, formulas, methods, models, processes, and work flows; specifications; know-how, show-how, and trade secrets; Assigned Intellectual Property and Proprietary Rights (each as defined below); research and development activities and test results; patent and trademark applications; software, source code, and object code; contracts and arrangements; business records; customer and vendor lists and information; marketing plans, business plans, and financial information and projections; compensation arrangements and personnel files; tax arrangements and strategies; intercompany arrangements; costs, price lists, and pricing policies; and any existing or proposed acquisition, strategic alliance, or joint venture.

…

   c. During the Employment Period and at all times thereafter, Employee shall use best efforts to hold all Confidential Information in the strictest confidence, without disclosure to any third party (even Athena's employees, consultants, and professional advisors) except as necessary to perform Employee's duties hereunder or as expressly authorized in advance by Athena, and will use such information solely for the purpose of performing services for Athena and not for Employee's own benefit or that of any third party. Employee shall not (i) disclose or use more than the minimum amount of information necessary for the purpose of that disclosure or use; (ii) render any services to any third party to which or to whom Confidential Information has been, or is threatened to be, disclosed contrary to this Section 5; or (iii) use or disclose any information that is subject to confidentiality restrictions placed upon it by a third party and may not be disclosed to Athena (Athena expressly disclaims any request or requirement that Employee disclose or use any such information).

7

…

  e. All Confidential Information and any media containing it are and shall remain the property solely of Athena or the third party that provided such information to Athena, and Employee shall not obtain any right, title, or interest in or to any Confidential Information under this Agreement or by the performance of any obligations hereunder.

34. The Agreement further provides for the issuance of injunctive relief should Employee breach Section 5 of the Agreement, regarding Confidential Information. Specifically, the Agreement provides:

  8. <u>Equitable Relief</u>

  Employee acknowledges and agrees that the rights and obligations set forth in Section 5, 6, and 7 of this Agreement are of a unique and special nature, that Athena would be materially and irreparably damaged if Employee breached any of those Sections, that monetary damages or any other remedy at law would not adequately compensate Athena for such injury, and that the provisions of those Sections are reasonable and necessary to preserve to Athena valuable proprietary and confidential information that gives Athena advantage over its competitors. Accordingly, in addition to any other rights and remedies it may have, Athena will be entitled to (a) an injunction, specific performance, or other equitable relief (without the necessity of posting any bond or other security or proving damages) in case of any breach or threatened breach by Employee of Sections 5, 6, or 7 and (b) indemnification against any costs and expenses (including, but not limited to, actual attorneys' fees and court costs) incurred by Athena in obtaining any relief under clause (a).

**May's Employment With Athena And Access To Athena's Confidential Information**

35. At the end of 2015 and the beginning of 2016, Athena reorganized certain areas of its Access and Awareness division, including its marketing department. As part of that reorganization, May's role changed.

36. At the time of and following the reorganization of the marketing department, May was working remotely in New Jersey and reporting to a supervisor in Athena's Watertown, Massachusetts office.

37. In her position as Senior Growth Analytics and Operations Associate following the reorganization, May had access to Athena's Confidential Information, as defined in the Agreement, and in particular had extensive access to Athena's Confidential Information regarding its clients and prospective clients.

38. Specifically, in her most recent role with Athena, May assisted the event marketing team in identifying clients and prospective clients for marketing events, as well as setting up the marketing team's email communications using the Eloqua platform, which is used to deploy marketing emails to clients and prospective clients. She was responsible for creating and implementing marketing lists using the data available in Salesforce.com and for creating notifications for the sales teams to follow-up with prospects for particular events.

39. In addition, May had responsibility to manage and create data in Salesforce.com for Athena's Epocrates commercial business. May provided lists of client targets for the Epocrates commercial business and managed leads obtained from marketing initiatives in Salesforce.com for the Epocrates commercial business.

40. May also worked directly with members of the marketing team to host webinars and import leads into Athena's system.

41. In the course of her work with Athena, May had access to valuable and highly confidential information about Athena's clients and prospective clients. She used this information extensively in her day-to-day work to assist Athena in identifying and targeting current and potential clients. May would frequently download confidential information from Athena's Salesforce.com and other systems to complete her work.

42. A post-employment analysis of May's Athena email account revealed that in the months before her employment ended, May downloaded confidential information from Athena's

databases and emailed that confidential information to her personal email account. There was no reason for May to email this information to her personal email to complete her work for Athena.

43. May also appears to have deleted a volume of emails from the "sent" folder of her Athena-issued email account shortly before her employment ended. On information and belief, May deleted these emails to conceal the fact that she was improperly taking confidential information, including confidential information regarding Athena's clients and prospective clients "on her way out the door."

### The End Of May's Employment With Athena

44. Very shortly after the reorganization of the marketing department in early 2016, Athena began to have concerns regarding May's ability to perform her role successfully while working remotely. Some of the central duties of May's new role required extensive collaboration and interaction with stakeholders and other colleagues, including on strategy and planning issues – work that is typically completed in-person. Unlike May, all of the other members working on these issues were located at Athena's headquarters in Watertown.

45. Athena provided May with suggestions on how she could effectively contribute to this collaboration and interaction while working remotely, for example by increasing her attempts to engage with stakeholders rather than relying solely on email. Those efforts were ultimately unsuccessful.[1]

46. Athena determined that the team needed May's role to be based in-person in the Watertown office, rather than remotely, in order for the role to meet Athena's needs.

47. On May 18, 2016, Athena informed May that she could no longer continue in her role as a remote employee because the team needed her role to be based in Watertown. Athena

---

[1] At this time May was exclusively working remotely. She informed Athena that she would be moving from New Jersey to an area in New York where Athena does not maintain an office.

10

offered May time and the opportunity to apply for other roles within the company where she could be a "remote" employee. Athena also offered May severance if she did not find an alternate role at Athena.

48.  May did not find an alternate role at Athena and her last day of employment was June 17, 2016.

### Athena's Pre-Litigation Efforts To Have May Return Athena's Property And Confidential Information

49.  On the last day of her employment – June 17, 2016 – Athena sent May a letter by email reminding her of her obligations with respect to Athena's Confidential Information and equipment. As set forth in the letter, May was clearly instructed that:

> …all equipment and documents about Athena's services, sales, customers and prospective customers that Athena provided to you or that you have generated during your employment belong to Athena and must be returned. This includes any copies. Athena does not agree to allow you to retain any of these items for any reason, even for use as forms or as reference material. If you have not already done so, please return any such items immediately.

A true and correct copy of this letter and the email forwarding the letter to May is attached as Exhibit D.[2]

50.  On July 12, 2016, Athena provided May with a shipping label so that she could return her Athena-issued laptop to Athena without incurring any cost. A true and correct copy of the July 12, 2016 email forwarding May a shipping label for her laptop is attached as Exhibit E.

51.  Athena subsequently communicated with May's attorney several times in an effort to secure the return of its property (including the computer) and Confidential Information.

---

[2] The letter was sent as a Word document containing an automatically-updating date field. Accordingly, the date in the letter will automatically update when the document is opened. The email reflects the date on which this letter was sent.

52. Despite Athena's efforts and May's contractual and other obligations, May failed to return Athena's property and Confidential Information, including the Athena-owned laptop computer issued to her during her employment.

## COUNT I
## Misappropriation Of Trade Secrets In Violation Of The Defend Trade Secrets Act

53. Athena restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

54. The Defend Trade Secrets Act ("DTSA") of 2016, Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016, and amends chapter 90 of Title 18 of the U.S. Code, forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate of foreign commerce."

55. "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or engineering information."

56. As described above, certain confidential and proprietary information of Athena constitutes trade secretes related to a product or service used in, or intended for use in, interstate commerce, including but not limited to information regarding Athena's clients and prospective clients.

57. Athena takes reasonable measures to protect the secrecy of such information. These measures include password-protected databases, confidentiality and non-disclosure agreements, and limitations on dissemination of information on a need-to-know basis.

58. May knew that she had a duty to maintain the secrecy of Athena's trade secrets, in part, by signing the Agreement. In addition, Athena expressly placed May on notice of her obligations with respect to Athena's confidential information at the time her employment ended.

59. May emailed Athena's trade secrets to her personal email accounts and is refusing to return a laptop computer containing Athena's trade secrets. On information and belief, May is also refusing to return other of Athena's trade secrets.

60. On information and belief, May has or intends to use Athena's confidential proprietary information for her benefit, or for the benefit of another party, without Athena's consent or authorization and in a manner that will cause irreparable harm to Athena.

61. May's actions constitute actual and continuing misappropriation in violation of the DTSA.

62. Athena has suffered damages and irreparable harm as a result of May's breaches of the DTSA.

63. Athena is entitled to actual damages from May and for attorneys' fees.

64. May's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief.

65. May actions will continue to continue to cause irreparable harm and damages to Athena and its trade secret information if not restrained.

## COUNT II
## Breach Of Contract

66. Athena restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

67. May entered into an Agreement with Athena, as described above.

68. The Agreement is an enforceable contract between Athena and May.

69. May has materially breached the Agreement as described above and, specifically, by taking the Confidential Information of Athena, as that term is defined in the Agreement,

without the written consent of Athena, and refusing to return that information and Athena's property, including a laptop computer.

70. Athena may learn of additional breaches of contract by May during discovery and reserves its rights to recover for any breach of the Agreement by the Defendant.

71. May's breach of the Agreement was and is a substantial factor in directly and proximately causing damages and irreparable harm to Athena. Athena has been and continues to be irreparably harmed by May's actions.

## COUNT III
### Breach Of The Implied Covenant Of Good Faith And Fair Dealing

72. Athena restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

73. The Agreement is a contract existing between Athena and May. The Agreement includes an implied covenant of good faith and fair dealing under Massachusetts law.

74. May acted in bad faith and with an improper motive as described herein, in breach of the implied covenant of good faith and fair dealing.

75. May's actions violate the reasonable and justifiable expectations of Athena under the terms of the Agreement and have the effect of injuring Athena's rights to receive the fruits of the Agreement.

76. May's breach was and is a substantial factor in directly and proximately causing damages and irreparable harm to Athena. Athena has been and continues to be irreparably harmed by the individual Defendants' actions.

## COUNT IV
## Common Law Misappropriation Of Confidential And Proprietary Information

77. Athena restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

78. Athena owns confidential and proprietary information as described herein.

79. May was provided with access to the confidential and proprietary information owned by Athena in the course of her employment.

80. May is obligated to maintain the confidentiality of the confidential and proprietary information she received from Athena in the course of her employment and is not permitted to use or disclose this information for her own benefit, or for the benefit of any new employer.

81. May misappropriated the confidential and proprietary information she received from Athena by taking it from Athena without Athena's consent or authorization.

82. On information and belief, May has or intends to use Athena's confidential proprietary information for her benefit, or for the benefit of another party, without Athena's consent or authorization and in a manner that will cause irreparable harm to Athena.

83. By reason of her wrongful conduct, May has misappropriated the confidential and proprietary information she received from Athena in violation of the common law.

84. Athena is informed and believes, and thereupon alleges, that May acted willfully and maliciously.

## COUNT V
### Misappropriation Of Trade Secrets In Violation Of M.G.L. c. 93, § 42

85. Athena restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

86. Athena provided information to May during the course of her employment that constitutes a trade secret under Massachusetts law.

87. May gained access to and learned Athena's trade secrets in confidence, and was under a contractual duty not to use or disclose Athena's trade secrets without Athena's authorization and consent.

88. Athena is informed and believes, and thereupon alleges, that May misappropriated Athena's trade secrets by improperly using and disclosing them, and by continuing improperly to use and disclose them, without Athena's consent or authorization.

89. By reason of her wrongful conduct, May misappropriated Athena's trade secrets in violation of M.G.L. c. 93, § 42.

90. Athena is informed and believes, and thereupon alleges, that May acted willfully and maliciously.

91. May's misappropriation was and is a substantial factor in directly and proximately causing damages and irreparable harm to Athena. Athena has been and continues to be irreparably harmed by May's actions.

## COUNT VI
### Breach of Fiduciary Duty

92. Athena restates and incorporates by reference all of the previous allegations herein as if set forth fully herein.

93. May occupied a position of trust and confidence at Athena and was required to protect its interests. May owed a fiduciary duty to Athena, including, among other things, a duty of loyalty and duty of care.

94. Notwithstanding these duties, Athena is informed and believes, and thereupon alleges, that May willfully and intentionally breached her fiduciary duties by taking Athena's Confidential Information of Athena without Athena's consent or authorization.

95. May's breach of her fiduciary duties was and is a substantial factor in directly and proximately causing damages and irreparable harm to Athena. Athena has been and continues to be irreparably harmed by May's actions.

## COUNT VII
### Conversion

96. May wrongfully exercised dominion and control over Athena's property and Confidential Information and, by failing to return same, converted Athena's property and Confidential Information without legal justification, authorization or privilege.

97. As a result of May's conduct, Athena has been and/or will be damaged.

### REQUESTS FOR RELIEF

WHEREFORE, Athena requests that this Court award the following relief:

A. Enter judgment in favor of Athena on all Counts in the present Complaint;

B. Award damages to Athena in an amount to be determined at trial;

C. Award Athena its costs, interest, and reasonable attorneys' fees; and

D. Issue a temporary restraining order, a preliminary injunction and ultimately, a permanent injunction, as follows:

   i. Defendant is required to return to Athena the laptop computer issued to her during her employment;

ii. Defendant is prohibited from using or disclosing any confidential information or property of Athena, including information taken without express authorization from Athena's premises and computer and systems;

iii. Defendant is required to comply with the terms of her Employment Agreement with Athena, including the provisions on non-disclosure of confidential information;

iv. Defendant and her agents are prohibited from destroying any documents or evidence in physical form and from deleting from computer systems or any electronic devices or media in their possession, custody or control any information or documents that pertain, directly or indirectly, to the claims set forth in the Complaint filed by Athena in this matter, until further order of the Court and forensic copies are made of Defendant's personal and home computers and any electronic storage devices, including but not limited to her personal computer(s), home computer(s), personal cellular phone(s), and other electronic storage media (*i.e.* USB flash drives, external hard drives, CDs, DVDs, media cards etc.) in her possession, custody or control;

v. Defendant and her agents are prohibited from deleting any email from any email account used by Defendant, until further order of the Court;

vi. Defendant and her agents are prohibited from deleting any documents stored in any Cloud storage accounts utilized or maintained by Defendant;

vii. Defendant is required to allow Athena's designated forensic expert to make forensic copies of any and all electronic devices or media in her

        possession, custody or control, including but not limited to her personal computer, home computer, personal cellular phone, and other electronic storage media (*i.e.* USB flash drives, external hard drives, CDs, DVDs, media cards etc.). Defendant shall provide Athena's designated forensic expert with access to all of the aforementioned electronic devices and media within two days of the Order being issued in order for such forensic copies to be made;

viii.    Defendant is required to allow Athena's designated forensic expert to make forensic copies of her: (1) personal email account(s), and other email accounts used by Defendant but not assigned to her by an employer (*e.g.* a shared home email account), including any potentially recoverable deleted email data in her possession, custody or control; (2) any personal Cloud storage account(s) utilized or maintained by Defendant. Defendant shall provide Athena's designated forensic expert with access to all of the aforementioned email accounts and Cloud storage accounts, to the extent such accounts exist, within two days of the Order being issued in order for such forensic copies to be made;

ix.    After the electronic media is forensically preserved as set forth herein, Defendant and her agents are required to return to Athena all property in their possession that lawfully belongs to Athena, including, but not limited to, any removable media and backup storage devices containing Athena information;

x. The Parties are required to engage in discussions regarding the manner in which a forensic review will be conducted of the computers and electronic storage devices preserved and forensically copied pursuant to this Order. In the event that the Parties are unable to reach an agreement regarding the protocol for forensic review within five days of the Order being issued, then the Parties should be ordered to submit to the Court their respective proposed versions of the forensic protocol and the Court shall determine the protocol to be followed;

xi. The forensic copies made pursuant to this Order are to be held in escrow by Athena's designated forensic expert, pending the Parties' agreement regarding the manner in which a forensic review will be conducted; and

xii. A final determination as to the cost allocation for the forensic preservation will be made at the conclusion of this matter.

E. Award Athena such other relief as this Court deems just and proper.

Dated: August 30, 2016

Respectfully submitted,

ATHENAHEALTH, INC.
By its attorneys,

 /s/ Sarah B. Herlihy
Sarah B. Herlihy, BBO # 640531
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts  02116
Phone:  (617) 367-0025
Fax:  (617) 367-2155
Email: sarah.herlihy@jacksonlewis.com

4834-2629-4071, v. 3